**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PAUL FITZGERALD,**

        **Plaintiff,**

**-vs-**                                     **Case No. 6:04-cv-1487-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on the complaint filed by Paul Fitzgerald seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for social security disability benefits. Doc. No. 1. The Commissioner answered the complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 7. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge for resolution of all further proceedings, and the case was referred to me. Doc. No. 9.

**I.     PROCEDURAL HISTORY**

In April 2002, Fitzgerald filed a claim for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401 *et seq.*, (the "Act"), alleging a disability beginning on June 16, 2001. R. 73-75. His claim was denied

initially and on reconsideration. R. 55-60. Fitzgerald timely requested a hearing before an administrative law judge ("ALJ"). R. 53.

On March 11, 2004, the ALJ held a hearing at which Fitzgerald, who was represented by an attorney, testified. R. 25-48. During the hearing, Fitzgerald amended his claim to allege a closed period of disability from June 16, 2001 through March 23, 2003, the date he had returned to work. R. 27-28. No other testimony was taken.

After considering the testimony taken and the medical evidence presented, the ALJ found that Fitzgerald met the disability insured status requirements on his alleged disability onset date and continued to be insured through the date of the ALJ's decision. R. 14. The ALJ further found that Fitzgerald had not engaged in substantial gainful activity during the requested closed period of disability. R. 21.

The ALJ concluded that Fitzgerald had a herniated disc at L5-S1 with spondylolisthesis,[1] and situational depression. R. 16. The ALJ concluded that these were severe impairments as defined in 20 C.F.R. § 404.1520(c), but that the impairments did not meet or equal any of the listed impairments in the Listing of Impairments. R. 21; *see* 20 C.F.R. § 404, Subpt. P, App. 1, Table 2.

The ALJ concluded that Fitzgerald had a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, but that the evidence did not support Fitzgerald's allegations as to the intensity and persistence

---

[1] Spondylolisthesis, or slipped disc, is where one vertebra slips forward on the adjacent vertebrae. Web MD, *Spondylolysis and spondylolisthesis*, found online at http://www.webmd.com/hw/health_guide_atoz/tn9255.asp (last visited Jan. 11, 2006). Spondylolisthesis puts pressure on nerves and results in pain in the lower back and legs. *Id.*

of such pain.  R. 17.  Specifically, the ALJ concluded that Fitzgerald's testimony as to an inability to do any work was inconsistent with the following evidence: first, that he had not had any medical treatment after March 18, 2002; second, that a consulting doctor concluded that he would have difficulty in strenuous activities, and recommended surgery, but did not find Fitzgerald disabled; third, that a consultative psychological evaluation concluded that Fitzgerald had depressive disorder and alcohol abuse in early partial remission, should be restricted to lifting no more than ten pounds, but did not prohibit him from working; fourth, that Fitzgerald's daily activities, including doing household chores, going to the grocery store and doctors' appointments, and fishing when able, did not indicate disability to the extent claimed by Fitzgerald; and fifth, that Fitzgerald was not taking any pain medication.  R. 17-19.

The ALJ concluded that Fitzgerald had the residual functional capacity ("RFC") to perform light work.[2]  R. 21.   He found that Fitzgerald could not return to his past relevant work, because that work exceeded the exertional limits of light work.  R. 16. The ALJ applied the Medical-Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt P, App. 2, which mandated a finding of not disabled.  Therefore, the ALJ determined that Fitzgerald was not disabled.  *Id*.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567.

Fitzgerald timely sought review of the ALJ's decision. R. 7. On August 13, 2004, the Appeals Council concluded that there was no basis to overturn the ALJ's decision. R. 4-6. Fitzgerald timely sought judicial review of this determination. Doc. No. 1.

## II.    JURISDICTION.

The Commissioner issued a final decision after a hearing with respect to Fitzgerald's application for disability benefits under OASDI. Therefore, this Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

## III.    STATEMENT OF FACTS.

### A.    Fitzgerald's Testimony

Fitzgerald was born on September 14, 1960. TR. 29. He completed school through the seventh grade. TR. 29. He had a driver's license. TR. 30. He could read a newspapers and do simple math, but writing was difficult for him. TR. 30.

He had been working as a handyman since March 24, 2003. TR. 30. Previously, he had worked as a glazier, in construction and in related fields. TR. 34, 37, 97, 110.

Fitzgerald was injured in an accident on July 24, 2000. TR. 40. His doctor advised him that he had a ruptured disc and recommended surgery. TR. 40. He treated Fitzgerald with a course of physical therapy. TR. 41. His doctor released him to return to work in November 2000, with a 2% permanent physical impairment rating. TR. 32. Fitzgerald returned to work as a glazier. TR. 41.

On June 16, 2001, Fitzgerald ruptured a disc in his back during a second accident. TR. 41. His doctor recommended spinal fusion surgery, but Fitzgerald declined that option because he was scared of adverse consequences of such surgery TR. 44. He

received worker's compensation payments after the second accident, but no vocational rehabilitation training.  TR. 35, 37, 38.

After the 2002 accident, Fitzgerald had constant pain in his back.  TR. 37, 45.  He could sit or stand twenty to thirty minutes at a time.  TR. 41-42. He could walk a quarter to one-half mile.  TR.  42. He was not permitted to do repetitive bending.  TR. 87.  He spend most of the day lying down, using heat and ice packs to alleviate pain.  TR. 42, 45.  He also suffered anxiety attacks.  TR. 43, 46.

Fitzgerald was treated by physicians while he was receiving worker's compensation payments.  TR.  38.  After those payments ceased, he was not able to continue treatment or purchase medication because he did not have insurance.  TR. 39, 42, 45.

During the day, he watched television and visited with family and friends.  He was able to travel to the grocery store and to doctors' appointments.  TR. 37.  He could cook his own meals and manage his own financial affairs.  TR. 77, 81-82.  He did limited household chores, some of which he did not finish.  TR. 81-82.  He was able to go fishing.  TR. 38.  All of his activities caused him pain.  TR. 38.

*B.     Medical Records*.

G. Grady McBride, M.D., an orthopaedic surgeon, examined Fitzgerald on August 3, 2000.  Fitzgerald reported that he had been injured one and one-half weeks earlier when he tripped carrying a window.  He complained of low back pain radiating into his right hip and right upper leg.  TR. 118.  A x-ray revealed mild slipping in a spinal vertebra (spondylolisthesis) at L5 and S1, but Dr. McBride did not observe any disc herniation.

TR. 116.  On examination, Dr. McBride confirmed pain, some spasms, and limited range of motion in Fitzgerald's back.  A straight-leg raising test was positive for pain in the right lower extremity.  TR. 117.  Fitzgerald's reflexes were also diminished.  TR. 116.  He treated Fitzgerald with a Medrol Dosepak, a corticosteriod[3], and referred him to physical therapy.  TR. 116.

Dr. McBride examined Fitzgerald again on August 30, 2000.  Fitzgerald was still complaining of right hip and right upper thigh pain, which had been somewhat relieved with epidural blocks.  Upon examination, Dr. McBride observed that Fitzgerald had good range of motion, but diffuse tenderness around the right hip and upper thigh area.  His assessment was a herniated disc at L5-S1 with right L3 radiculopathy.  He permitted Fitzgerald to perform light duty work.  TR. 115.

On November 14, 2000, Fitzgerald again visited Dr. McBride.  At that time, the epidural blocks had alleviated much of his pain, although Fitzgerald still complained of mild pain in the lower back.  Dr. McBride recommended that Fitzgerald continue an exercise program.  He authorized Fitzgerald to return to regular duty work as of November 14, 2000.  TR. 115.  For purposes of worker's compensation coverage, Dr. McBride opined that Fitzgerald had a 2% permanent physical impairment.  TR. 114.

Regan R. Burke, D.O., treated Fitzgerald from August 2001 through March 2002.  TR. 169-82.  In August 2001, Fitzgerald complained of back pain with numbness down his right thigh.  TR. 182.  Dr. Burke treated him with Lorcet, a narcotic analgesic and

---

[3] All of the information in this order explaining the type of medication prescribed for Fitzgerald is taken from MedlinePlus, found online at http://medlineplus.gov.

acetaminophen, among other things.  TR. 182.  Dr. Burke recommended light duty work with restrictions of no prolonged sitting or standing (thirty-minute limit), no bending or lifting and no exterior walking.  TR. 181.

In September 2001, Fitzgerald reported having occasional good days but mostly bad days with constant pain.  Pain medications were not effective, but Flexeril, a muscle relaxant, helped.  Dr. Burke prescribed Percocet, a narcotic analgesic and acetaminophen, and Flexeril, among other things.  He continued to limit Fitzgerald to limited duty work through November 2001.  TR. 175-80.  Beginning in late November 2001, Dr. Burke concluded that Fitzgerald suffered from situational depression.  TR. 174.  Dr. Burke continued to recommend that Fitzgerald remain on limited light duty work.  TR. 172-73.  Later in December, Fitzgerald reported that Paxil was helping with the depression.  However, he complained of a jolt of pain running through his back and leg.  TR. 171.  In January 2002, Dr. Burke recommended that Fitzgerald not work for all for at least three weeks.  TR. 170.

In February 2002, Christie McMorrow, M.D., examined Fitzgerald.  At that time, Fitzgerald complained of back and right lower extremity pain over the last two years.  He had been able to work, albeit with discomfort, until he was injured again in June 2001.  He reported that he had constant aching back pain radiating into his right buttock and shooting down his right leg. Upon examination, Dr. McMorrow observed that Fitzgerald walked with a slight limp.  TR. 121.  His reflexes were diminished.  An MRI taken in August 2001 revealed grade I spondylolisthesis with overlying disc herniation causing foraminal stenosis.  TR. 120-21.  Dr. McMorrow's impression was lumbar

spondylolisthesis, resulting in an unstable lumbar spine.  She recommended lumbar decompression and fusion surgery.  TR. 121.

William W. Austin, Psy.D., examined Fitzgerald at the request of the SSA in November 2002.  Fitzgerald reported that he had run out of medication about two months before the examination.  TR. 140.  He complained of poor concentration, irritability, crying, and a depressed mood.  He was able to care for his personal hygiene and some household chores.  He reported occasionally taking a nap for about one hour during the day.  He was able to visit with family and friends, go to the grocery store and doctors' appointments, and fish when he was able to do so.  TR. 141.  Dr. Austin opined that Fitzgerald's social functioning was adequate, and that his functional ability was fair.  He opined that lifting more than ten pounds would probably be restricted.  TR. 141. Dr. Austin's diagnosis was depressive disorder, not otherwise specified, with alcohol abuse in early, partial remission, and lumbar spondylolisthesis, by history.  TR. 142.

Nitin Haté, M.D., also examined Fitzgerald at the request of the SSA in November 2002.  Dr. Haté observed that Fitzgerald's gait and reflexes were normal.  TR. 143-44. A straight-leg raising test was negative for pain, but he noted spasms in Fitzgerald's back.  Fitzgerald had reduced range of motion in the thoracolumbar spine.  TR. 144.  Dr. Haté opined that Fitzgerald would have difficulty with strenuous activities, particularly repetitive stooping and lifting heavy weights.  He opined that Fitzgerald's condition would probably deteriorate without surgery.  TR. 145.

Two doctors assessed Fitzgerald's functional capacity based on a review of his medical records.  In November 2002, Eric Wiener, Ph.D., opined that Fitzgerald mental

-8-

condition would result in only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in concentration, persistence or pace. TR. 147-60.  In December 2002, M. delaCerna, M.D., opined that Fitzgerald has the physical RFC to lift twenty-five pounds frequently, and fifty pounds occasionally.  Dr. delaCerna indicated that Fitzgerald could sit, stand or walk about six hours in an eight-hour workday.  TR. 161-68.

**IV.    STANDARD OF REVIEW.**

To be entitled to Social Security disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C).  The Act provides further that a claimant is not disabled if he is capable of performing his previous work, or, if "considering his age, education, and work experience, [he could] engage in any other kind of substantial gainful employ which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).


The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "'must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision.'" *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987)(quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Id.* While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

**V.     ANALYSIS.**

Fitzgerald contends that the ALJ erred by relying on the grids rather than calling a vocational expert to determine whether there were jobs available in the economy that he could perform.  He also asserts that the ALJ did not properly assess his complaints of pain. These contentions are interrelated.

*A.     The Pain Standard*.

"The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.  1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the Commissioner discredits the claimant's subjective testimony, she "must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62.

In this case, the ALJ concluded that Fitzgerald had a "medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged."  TR. 17.  The ALJ concluded, however, that the pain was not as debilitating as claimed by Fitzgerald for the following reasons: (1) Fitzgerald had not had medical treatment for more than two years and was not taking medication; (2) Dr. Haté and Dr. Austin concluded that Fitzgerald could work; and (3) Fitzgerald's activities of daily living were inconsistent with his allegations of disability.  TR. 17-18.

Substantial evidence in the record does not support the first of these reasons. Fitzgerald testified that he was unable to afford medical treatment and medication after his worker's compensation payments ended. *Cf. Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (holding that poverty excuses noncompliance with treatment).[4] Further, the ALJ failed to mention that when Fitzgerald was receiving treatment, his doctors credited his complaints of pain, as shown by the prescriptions of narcotic pain medication and muscle relaxants and the repeated recommendations that Fitzgerald have back surgery.

As to the second factor, the ALJ correctly found that neither Dr. Haté nor Dr. Austin concluded that Fitzgerald was disabled. However, both opined that Fitzgerald would have limitations on the work he could perform. Dr. Haté concluded that Fitzgerald could not lift heavy weights or perform repetitive stooping. Dr. Austin limited the weight Fitzgerald could lift to ten pounds. It is unclear why the ALJ credited Dr. Haté and Dr. Austin's conclusion that Fitzgerald was not disabled but did not adopt their opinions regarding Fitzgerald's exertional and nonexertional limitations. The ALJ also totally omitted discussion of the opinions of Fitzgerald's treating physicians. Dr. Burke, who treated Fitzgerald from August 2001 through March 2002, recommended light duty work

---

[4] The Commissioner argues that Fitzgerald's testimony that he could not afford medical care or prescriptions without insurance is belied by the evidence that he could afford to buy a pack of cigarettes daily and a six-pack of beer weekly. Doc. No. 24 at 8. While I doubt that the financial ability to buy beer and cigarettes is comparable with the money needed to obtain medical care and prescriptions, the question on review is not what the ALJ could have considered, but what specific findings the ALJ actually made.

with restrictions of no prolonged sitting or standing, no bending or lifting, and no exterior walking.

Finally, the ALJ's recitation of the activities of daily living in which Fitzgerald engaged is supported by substantial evidence in the record. However, the ALJ did not explain how these activities of daily living supported a finding the Fitzgerald could do light duty work, which requires the ability to do sustained work activity five days a week, eight hours a day.

Accordingly, while the ALJ articulated reasons for rejecting Fitzgerald's testimony regarding the limitations arising from his pain, these reasons are based on an inaccurate and incomplete review of the record. These reasons are, therefore, insufficient to support the ALJ's assessment of the functional limitations arising from the pain Fitzgerald experienced.

    B.    *Application of the Grids.*

"Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do. . . . Although this burden can sometimes be met through straightforward application of [the grids] . . . [e]xclusive reliance on the grids is appropriate in cases involving only exertional impairments . . . [and is] inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities." *Foote*, 67 F.3d at 1559 (internal citations omitted).

Nonexertional impairments include postural limitations on the ability to climb, balance, stoop, kneel, crouch, and crawl. *Walker*, 826 F.2d at 1003 ("Non-exertional impairments include 'postural and manipulative limitations, and must be considered in determining a claimant's residual functional capacity.' 20 C.F.R. § 416.945(d)."). Nonexertional impairments also include mental and emotional impairments, as well as pain. *Foote*, 67 F.3d at 1559.

"[W]hen both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).[5] "If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform." *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

In this case, the ALJ found that Fitzgerald had nonexertional impairments, specifically situational depression and limitations arising from pain. As discussed above, the ALJ did not explain why he rejected the opinions of treating and consulting physicians

---

[5] It is not clear what criteria the ALJ should use to determine whether a claimant can do a wide range of work at a given exertional level despite certain nonexertional impairments. I do not need to resolve that question in the case, however, because the ALJ did not analyze how limitations arising from pain and depression would affect Fitzgerald's ability to do light duty work.

who opined that Fitzgerald would have some specific functional limitations arising from these nonexertional impairments, including limitations on stooping, bending, sitting and standing.  He also did not make specific findings as to whether the nonexertional limitations were severe enough to preclude a wide range of light duty work.   Without a finding, supported by substantial evidence, that Fitzgerald could clearly perform a wide range of light duty work despite his nonexertional impairments, use of the grids was inappropriate.

      *C.*    *Award of Benefits or Remand*.

Fitzgerald requests that the Court order the Commissioner to pay him disability benefits.  A court may order an award of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  Here, the record does not establish disability without any doubt.  Rather, remand is required to permit the Commissioner to assess the functional limitations arising from Fitzgerald's pain and other exertional and nonexertional impairments to render a decision, based on the record as a whole, about the extent that those impairments limit his residual functional capacity and the jobs that Fitzgerald could perform despite his functional limitations.

**VI.   CONCLUSION.**

For the reasons set forth herein, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings. The Clerk of Court is directed to issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 16, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties